IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JAMES WILLIAM DAVIS**                                                                              **PLAINTIFF**

**V.**                                      **CASE NO. 5:22-CV-5201**

**COMMISSIONER,**
**Social Security Administration**                                                                   **DEFENDANT**

**OPINION AND ORDER**

Before the Court is the Report and Recommendation ("R&R") (Doc. 22) of the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas, regarding Plaintiff James William Davis's request for judicial review of the decision to deny his claim for supplemental security income benefits under the provisions of Title XVI of the Social Security Act ("SSA"). The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") finding that Mr. Davis is capable of performing sedentary work with restrictions and is not entitled to benefits. Mr. Davis filed an Objection to the R&R (Doc. 23), arguing the ALJ should have fully and fairly developed the record before making his final disability determination. The Court has reviewed the record *de novo* and now rules on the Objection below.

Mr. Davis's SSA claim arises primarily from injuries he sustained in a grievous dirt biking accident on January 26, 2020. The most relevant injuries to his claim were a C3 vertebral fracture, C5 vertebral fracture, and right wrist fracture, which he underwent cervical spine and wrist surgery to repair.[1] Mr. Davis had previously injured his left ankle

---

[1] Mr. Davis broke a total of eleven bones in the January 2020 accident. In addition to the injuries described above, he also fractured his rib, pelvic ring, sacrum, and tibia.

1

and left wrist in separate incidents, and these conditions also contributed to his disability claim. Mr. Davis alleges that, cumulatively, his injuries and subsequent surgeries left him with "neck problems, left ankle problems, and wrist problems," (Doc. 22, p. 1), which have prevented him from working since November 5, 2019. At that time, he was 39 years old and had been employed as a maintenance mechanic.

Mr. Davis filed applications for disability insurance benefits and supplemental security income on February 5, 2020. An administrative hearing before the ALJ was held on May 4, 2021. At the close of the Hearing, the ALJ decided to hold the record open for thirty days, until June 4, 2021, to allow Mr. Davis time to submit additional medical records. Material here, Mr. Davis had an appointment scheduled for May 7, 2021 with his neurosurgeon's physician's assistant at NWA Neuroscience Institute. On June 4, 2021, Mr. Davis's counsel submitted the medical record from that appointment.

On September 17, 2021, the ALJ issued its decision, finding that Mr. Davis was "not disabled" within the meaning of the SSA. Although the ALJ acknowledged that Mr. Davis had an impairment or combination of impairments that were severe, he found that:

> [T]he claimant has the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could never climb ladders, ropes, or scaffolds. The claimant could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.

(Doc. 13, p. 19). Mr. Davis requested a review of the ALJ's decision by the Appeals Council, which was denied. He then filed this action before the Magistrate Judge. After reviewing the record in its entirety, the Magistrate Judge's R&R recommends affirming the ALJ's finding that Mr. Davis is capable of performing sedentary work with restrictions

2

and is not entitled to benefits. Mr. Davis objects here.

The Court reviews this case *de novo* to "ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016); *see* 42 U.S.C. § 405(g). Substantial evidence is a less onerous burden than preponderance of the evidence: it is satisfied when a reasonable mind would accept the evidence as "adequate to support [the ALJ's] conclusion." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). The Court "must consider evidence in the record that fairly detracts from, as well as supports" the ALJ's decision in its substantial evidence analysis. *Id*. Ultimately, if the Court determines that the ALJ's decision is supported by substantial evidence on the record as a whole, then it must affirm. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009)). In other words, Court may not reverse simply because substantial evidence exists in the record that could have supported a contrary outcome, or because the Court could have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Remand is warranted, however, where "the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit [the] [c]ourt to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008).

In the instant Objection, Mr. Davis argues that his condition had substantially changed in early 2021 because of a "big fall," which led to "new neurological signs clinically indicating significant upper extremity impact" and further impaired him from sedentary work. (Doc. 23, p. 6). Mr. Davis points the Court to the medical record that was

3

prepared on May 7, 2024, by Kelsey Harper at NWA Neuroscience Institute, physician's assistant to Dr. Brent Peterson, Mr. Davis's neurosurgeon:

> This patient was seen today in follow-up evaluation after having undergone C5 corpectomy with fusion from C4–C6 on January 27, 2020 with Dr. Peterson. He did very well post operatively and completed PT. Three months ago, he developed increased issues with neck pain after a big fall. Then developed bilateral arm pain and paresthesia through lateral arm and into thumb. He notes dropping objects and grip related weakness. . . . No recent images or treatment other than XR this morning.

(Doc. 13, p. 669 (cleaned up)). Ms. Harper assessed these symptoms as cervical radiculopathy[2] and ordered an evaluative MRI as part of Mr. Davis's treatment, due later that month. *See id.* at 671 (cleaned up) ("MRI Spine Cervical w/o Contrast; . . . Requested for: 07 May, 2021; . . . Due: 17 May, 2021; . . . For: Cervical radiculopathy").

Mr. Davis maintains that these new symptoms materially altered his ability to work and should have been considered in his RFC decision. *See, e.g.*, Doc. 23, p. 7 ("The record was not developed regarding specifically what the significance of the neurological symptoms and orthopedic symptoms translated to in vocational terms," i.e., his ability to perform sedentary work.). He argues that because the new information presented at the Hearing and in Ms. Harper's medical record caused the ALJ to "disregard earlier RFC opinions by reviewing DDS doctors, since they lacked access to the new evidence," the ALJ was "obligated to seek professional medical guidance" on how the new evidence of cervical radiculopathy affected his ability to work before determining his RFC. *Id*. He

---

[2] "Cervical radiculopathy occurs when a nerve root in the spine is compressed or impeded, leading to pain that can spread beyond the neck and into the arm, chest, shoulders, and upper back." Warren Magnus et al., *Cervical Radiculopathy*, Nat'l Libr. Med. (Jan. 31, 2024), https://www.ncbi.nlm.nih.gov/books/NBK441828/ [https://perma.cc/D75D-FW4V].

concludes that the ALJ's failure to do so amounts to reversible error, and that this "speculation and error" was not addressed in the R&R. *Id.*

The ALJ has an independent duty to fully and fairly develop the record "until the evidence is sufficiently clear to make a fair determination as to whether the claimant is disabled or not," even where the Plaintiff is represented by counsel. *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974) (quoting *Sellars v. Sec'y, Dep't of Health, Ed. & Welfare*, 458 F.2d 984, 986 (8th Cir. 1972)). Pursuant to that duty, the ALJ's RFC determination must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers*, 721 F.3d at 527 (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). An ALJ "is not limited to considering medical evidence exclusively," *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) (citation omitted), nor is he "required to discuss every piece of evidence submitted," *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). But it is well established that a "claimant's RFC is a medical question" that "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

If a crucial medical issue is undeveloped, the ALJ is required "to seek additional clarifying statements from a treating physician." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ is not required to order a consultative evaluation of every alleged impairment. *See Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). But the ALJ does have "the authority to do so if the existing medical sources do not contain sufficient

5

evidence to make a determination," *id.*, and "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled," the ALJ is "required to order [additional] medical examinations and tests." *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986)). "Thus, the proper inquiry for this Court is not whether a consultative examination should have been ordered; rather, it is whether the record contained sufficient evidence for the ALJ to make an informed decision." (Doc. 22, p. 5 (citing *Bowen*, 879 F.2d at 424).

Here, whether the record was fully and fairly developed with respect to Mr. Davis's big fall is a close question. Mr. Davis's cervical radiculopathy was not discussed explicitly at his Hearing May 2021, although the big fall occurred in early 2021, several months prior. Neck pain—a symptom of cervical radiculopathy—was discussed at the Hearing in the context of Mr. Davis's current treatment at NWA Neuroscience Institute from Dr. Peterson and Ms. Harper. Specifically, Mr. Davis testified that he had an upcoming appointment with Ms. Harper to address a painful "popping" sensation in the area of his neck that had been treated during surgery on his cervical spine. *See* Doc. 13, pp. 39–41. However, the record is ambiguous as to whether the popping condition was caused by a previous complication from his surgery or the big fall. The only other record of neck pain from the period between Mr. Davis's big fall and his hearing is a physical therapy record from February 12, 2021, which notes:

> Pt here in November for his neck pain. He thought he was doing better, but now is getting worse again. He is having a lot of pain in his neck. Pain level is currently at 6/10 with discomfort.

6

*Id*. at 573. That record includes a diagnosis for cervicalgia (i.e., neck pain), with an onset date of February 1, 2021. But it does not include any mention of a fall as its cause. The Court cannot find that these general discussions, standing alone, amount to sufficient evidence for the ALJ to make an informed decision about the effect of Mr. Davis's big fall and subsequent cervical radiculopathy on his ability to perform sedentary work.

The ALJ's decision, however, does discuss "radicular pain" explicitly in its RFC determination. Specifically, the ALJ states that:

> By February of 2021, the claimant's neck pain had returned with associated stiffness. In addition, he had radicular pain into his bilateral arms, with associated paresthesia down the arm into the thumb. The claimant's pain increased with lifting, personal care activities, and driving. The claimant also endorsed dizziness with range of motion exercises. He also described a popping and burning sensation in his neck with certain movements, such as leaning forward.

*Id.* at 21 (citations to the record omitted). The ALJ also specifically cited radicular pain and paresthesia as reasons that the medical opinion of Disability Determination Services ("DDS") consultant James W. Takach, M.D.—who concluded that Mr. Davis could "perform light exertional work, but could only occasionally climb, balance, stoop, kneel, crouch, and crawl"—was "not fully persuasive." *Id.* The ALJ determined that Mr. Davis had the "residual functional capacity to perform *sedentary work . . . except the claimant could never climb ladders, ropes or scaffolds*." rather than adopt Dr. Takach's recommendation that Mr. Davis could perform "light external work," in part, because Mr. Davis had "developed radicular pain into his bilateral arms, with associated paresthesia down the arm into the thumb" based on Ms. Harper's medical record. *Id.* at 24. Mr. Davis argues that this interpretation was a bridge too far and that the ALJ "played doctor" by

7

determining his RFC "without any opinion evidence addressing Plaintiff's work abilities after the change in condition." (Doc. 23, pp. 5, 7).

Although the ALJ is not required to order a consultative evaluation of every alleged impairment, *Bowen*, 879 F.2d at 424, here, the ALJ was presented with a new medical record from NWA Neuroscience Institute that suggests a crucial issue, cervical radiculopathy, was undeveloped. *Stormo*, 377 F.3d at 806. There is sufficient—indeed, extensive—evidence on the record regarding the impact of Mr. Davis's cervical spine surgery and subsequent complications on his ability to work, including reports from medical visits and consultative evidence from two DDS doctors. But the existing medical records do not contain sufficient evidence to make an RFC determination with respect Ms. Harper's new diagnosis of cervical radiculopathy and its impact on Mr. Davis's ability to perform sedentary work. *Bowen*, 879 F.2d at 424; *see also Cox*, 495 F.3d at 619 ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."). It is certainly possible that the symptoms of cervical radiculopathy, "bilateral arm pain and paresthesia through lateral arm and into thumb," (Doc. 13, p. 669), impact Mr. Davis's functional ability. But the Court is unsure from the record, and that is precisely the point: it contains no medical evidence that shows how cervical radiculopathy affects Mr. Davis in the workplace. The ALJ thus erred by drawing his own inferences about the effect of the new condition on Mr. Davis's RFC. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" (quoting *Strongson v. Barnhart*, 361 F.3d 1066,

1070 (8th Cir. 2004))).

Mr. Davis cites this Court's decision in *Sisto v. Comm'r, Soc. Sec. Admin.*, 2023 WL 6213441 (W.D. Ark. Sept. 25, 2023), as dispositive of his Objection. In *Sisto*, "[t]he Court agree [d] with the Magistrate Judge that the ALJ must seek a consultative medical opinion regarding a new MRI," *id.* at 1, the details of which were as follows:

> [T]he ALJ received at or around the time of the hearing some new imaging data that "reveal[ed] lumbar disc disease and degenerative changes of the hips as well as ... evidence of emergency care treatment for abnormal lung sounds." He observed that [two] consulting doctors . . . "did not have the opportunity to consider the evidence secured at the hearing level," and, for that reason alone, the ALJ deemed the doctors' RFC opinions "unpersuasive" and disregarded them.
>
> [But] [r]ather than order a consultative medical review of the recently submitted evidence, it appears the ALJ took it upon himself to interpret the new evidence and determine that that an RFC of "light work" with certain conditions was sufficient to address Ms. Sisto's new or worsening physical ailments.

*Id.* at 1–2 (citations omitted). The Court admonished that "[a]n ALJ—though well versed in disability law and familiar with reviewing medical records—is not a medical doctor," *id.* at 2, and held that "[t]o the extent he relies on a particular piece of medical evidence in making an RFC finding, he can report what the evidence plainly states, but he lacks the discretion to go a step further and interpret the evidence's implications on the claimant's ability to perform discrete job tasks," *id.* (citing *Byes*, 687 F.3d at 916).

The Court finds that *Sisto* further counsels in favor of sustaining Mr. Davis's Objection. Although the underlying conditions that imaging revealed in *Sisto* are distinct from the radiculopathy at issue here, the Court's logic remains the same: additional medical evidence is required to determine the impact of Mr. Davis's new condition on his

ability to work. Here, as in *Sisto*, the ALJ did not fully and fairly develop a record on the newly submitted medical evidence, e.g., by ordering a consultative evaluation from Dr. Peterson or Ms. Harper before determining Mr. Davis's functional capacity. *See Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citation omitted)). Instead, he took it upon himself to interpret the new evidence in his RFC determination.

The ALJ must support his RFC determination with substantial evidence. *Brown*, 825 F.3d at 939. In this case, substantial evidence includes a fully and fairly developed medical record on the impact of Mr. Davis's cervical radiculopathy on his ability to work. Failure to fully and fairly develop the record is a reversible error, and the Court finds such error here. *See Combs*, 878 F.3d at 646 (as previously quoted); *Byes*, 687 F.3d at 916 (similar).

**IT IS THEREFORE ORDERED** that Mr. Davis's Objection (Doc. 23) is **SUSTAINED** to the extent described above. The Magistrate Judge's R&R (Doc. 22) is otherwise **ADOPTED IN FULL**, and the decision of the ALJ is **REVERSED AND REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 31st day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE